670 So.2d 1332 (1996)
STATE of Louisiana
v.
Elcee WOOLRIDGE.
No. 95-KA-971.
Court of Appeal of Louisiana, Fifth Circuit.
February 27, 1996.
*1334 Linda Davis-Short, Staff Appellate Counsel, Indigent Defender Board, Gretna, for Appellant Elcee Woolridge.
John M. Mamoulides, District Attorney, Terry M. Boudreaux, Assistant District Attorney, Research & Appeals, Gretna, for State.
Before DUFRESNE, GOTHARD and CANNELLA, JJ.
CANNELLA, Judge.
Defendant, Elcee Woolridge, appeals from his sentence for possession of a firearm by a convicted felon and his conviction and sentence for three counts of contempt of court. We affirm and remand.
On September 13, 1994 defendant was charged by bill of information with the violation of La.R.S. 14:95.1, possession of a firearm by a convicted felon. Defendant pled not guilty and proceeded to trial on June 12, 1995. When the jury was unable to reach a verdict the following day, the trial court declared a mistrial. Defendant was tried again on August 29, 1995. That same day the jury returned with a verdict of guilty, as charged. Several weeks later, on September 18, 1995, the trial court sentenced defendant to ten years imprisonment at hard labor, without benefit of probation, parole or suspension of sentence, but with credit for time served. The trial court also found defendant guilty of three counts of contempt of court, for which defendant was sentenced to six months on each count. The court then ordered that the three six month sentences run consecutively with each other and consecutively with the ten year sentence. Subsequently, on October 18, 1995, defendant filed a motion to reconsider the sentences, which was denied.
On the evening of July 25, 1994, Detective James Wright, along with two officers of the Street Crimes Unit and one uniformed officer, proceeded to 1144 Tallow Tree Drive, Apt. D in Harvey, Louisiana to execute a warrant for defendant's arrest. Upon arriving, Wright knocked on the door. When defendant opened the door, Wright asked him if he was Elcee Woolridge. Defendant replied "yes" and Wright told him that he had a warrant for his arrest. Defendant "turned around on" Wright and started to walk away from the door. Wright then instructed him to place his hands against the wall. According to Wright, defendant "then moved his hand to the front of him at that point and the other one went to the front...." Believing that defendant "was going for his waist" where "he's probably got a weapon of some type," Wright grabbed defendant and shoved him against the wall. Wright felt a gun in defendant's waistband, which he then removed and unloaded.
At trial, defendant contended that he did not have possession of a gun and that he was "framed." His girlfriend, Joy Refuge, who was in the house on the second floor when the officers arrived, testified that her brother had a gun that was kept on the shelf of a second floor closet. However, she had not seen the weapon for approximately one week. She also stated that she had not seen a weapon on defendant that day.
At trial, the state and the defense stipulated that defendant was previously convicted of possession with intent to distribute cocaine in the Orleans Parish Criminal District Court on April 12, 1994.
On appeal, defendant contends that the trial judge erred in imposing an excessive sentence and in finding defendant in contempt of court. Defendant also requests a patent error review.
Defendant contends that the maximum ten *1335 year sentence[1] constituted an excessive sentence, considering that the sentencing guidelines recommended a sentence between two and three years. In addition, defendant asserts that the trial judge failed to obtain a pre-sentence investigative report in order to consider his history, family and other potential mitigating factors. Defendant notes that there are no aggravating circumstances in the record that would warrant imposition of the maximum sentence for this crime. He argues that the maximum sentence should be reserved for the very worst offenders of the crime of possession of a firearm.
Effective August 15, 1995, the legislature repealed the sentencing guidelines and amended La.C.Cr.P. art. 894.1 to delete reference to those guidelines and to provide the sentencing guidelines which are now in effect. Acts 1995, No. 942; See also: State v. Guzman, 95-444 (La.App. 5th Cir. 11/15/95), 665 So.2d 512. As amended, La.C.Cr.P. art. 894.1(C) now requires that the trial court state for the record the considerations taken into account and the factual basis for imposing sentence. In addition, the revision amended La.C.Cr.P. art 881.4 to state, "The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed."
In imposing the sentence, the trial court gave the following reasons:
All right, Mr. Woolridge [defendant].
Anyway, you were convicted of a prior crime [possession with intent to distribute cocaine], which was very serious. I saw you twice on the stand. You didn't appear to have any remorse. Your life style didn't appear to have changed and you hadn't done anything to keep yourself out of trouble. You had a gun in your waistband the evidence showed, that you were reaching for that gun when you had police officers at your door. You are wanted for other crimes, some of which are extremely serious. We're talking one of them murder. I don't know whether you committed those crimes, but I can consider the evidence that you've been arrested for those crimes in setting your sentence.[2] So based on everything and after considering the sentencing guidelines, the felony sentencing guidelines, which in my understanding are no longer in effect
* * * * * *
because the 1995 legislature threw them out, and also considering all the sentencing guidelines contained in Article 894.1 of the Code of Criminal Procedure as well as considering the part which says that any sentence lesser than what I'm going to give will deprecate the seriousness of the crime, which I think carrying pistols around, especially when you are a convicted felon, is not only serious, it's extremely serious. You've already shown and been warned you shouldn't be doing certain things and you go and carry a weapon. That is in my mind extremely serious and dangerous to our society.
So, therefore, I will sentence you to the maximum allowed by the statute. (Footnote added)
The Louisiana Constitution in Article 1, Section 20 prohibits the imposition of excessive punishment. If the sentence is grossly out of proportion to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering, then it is constitutionally excessive. State v. Bradham, 94-71 (La.App. 5th Cir. 5/31/94), 638 So.2d 428, 430. In addition, a sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Id. at 430. However, even a sentence that is within the statutory limit may violate a defendant's constitutional right against excessive punishment. Id. at 430; State v. Sweeney, 443 So.2d 522 (La.1983). Only if there is a showing of clear abuse of the trial court's wide *1336 discretion to sentence within statutory limits will the sentence be set aside. Id. at 430; State v. Lobato, 603 So.2d 739 (La.1992), appeal after remand, 621 So.2d 103 (La.App. 2nd Cir.1993).
In this case, defendant was found in possession of a gun while being arrested pursuant to a warrant. According to the evidence, when confronted by the police officers prior to being restrained, defendant reached for the gun which was later found in his waistband. This shows that he intended to use the weapon to resist his lawful arrest. Additionally, defendant committed this offense within approximately three and one-half months of his predicate conviction of possession with intent to distribute cocaine, thereby demonstrating his propensity for criminal activity. The trial judge viewed defendant on two occasions and found that he did not exhibit any remorse. He concluded that defendant is dangerous. After reviewing the record, we find that the trial judge did not impose an excessive sentence. The maximum sentence of ten years is neither disproportionate to the offense nor does it amount to a purposeless and needless infliction of pain and suffering. Therefore, we affirm the sentence.
Defendant next contends that the trial court erred in finding him in contempt of court on three separate occasions during the sentencing proceeding. Specifically, defendant argues that the exchanges between defendant and the trial court did not amount to direct contempt of court.
Following the imposition of defendant's sentence by the trial court, defense counsel informed the trial court that defendant had drafted a pro se motion for prohibition seeking to delay his sentencing, citing La.C.Cr.P. art. 873. Noting that defendant was "convicted more than three days ago," the trial court denied the motion. The prosecutor also noted that the motion had not been formally filed with the clerk's office. Thereafter, according to the transcript, the following occurred:
(Another matter was taken up by the court)
(Inaudible comment made by the defendant)
THE COURT:
Mr. Woolridge, don't disrupt this court.
THE DEFENDANT:
Man, I had that motion filed, and y'all denied my motion.
THE COURT:
Mr. Woolridge
THE DEFENDANT:
The record reflect that you denied it.
THE COURT:
Mr. Woolridge
THE DEFENDANT:
Man, leave me out of here.
MR. HINGLE [defense counsel]:
Please
THE COURT:
All right. Mr. Woolridge, fine, I just found you in contempt of court, sir. I'm sentencing you to another six months.
THE DEFENDANT:
Good. Give me six more.
THE COURT:
All right, Mr. Woolridge, you've got your wish. You've got another six months. That makes a year. Do you want to keep on going? I can't run out of sixes.
THE DEFENDANT:
Man, take me out of here.
THE COURT:
Yes. Get him out of here before he
winds up having the rest of his life in
prison for his big mouth.
MR. MOLAISON [Prosecutor]:
Judge, on Number 14, Troy Ansardi, we're going to reset that.
THE COURT:
Those six months for contempt are to run consecutive with each other and consecutive with the sentence previously given.
(Another matter was taken up by the court)
THE DEFENDANT:
Y'all ain't nothing but a bunch of railroading Klu Klux Klans
THE COURT:

*1337 All right, Mr. Woolridge, guess what? We just did it. You're going to show us, right?
THE DEFENDANT:
I don't care, man.
THE COURT:
All right. You've got another six months on there.
THE DEFENDANT:
Man, I don't care, man.
THE COURT:
You don't care. Oh, that makes two of us now. Consecutive. He showed us.
(End of proceedings in this matter).
"A contempt of court is an act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority." La.C.Cr.P. art. 20. There are two kinds of contempt of court, direct and constructive. Id.
The definition of a direct contempt is found in La.C.Cr.P. art. 21 which reads, in part, as follows:
A direct contempt of court is one committed in the immediate view and presence of the court and of which it has personal knowledge; or, a contumacious failure to comply with a subpoena, summons or order to appear in court, proof of service of which appears of record; or, a contumacious failure to comply with an order sequestering a witness.
A direct contempt includes, but is not limited to, any of the following acts:
* * * * * *
(5) Contumacious, insolent, or disorderly behavior toward the judge or an attorney or other officer of the court, tending to interrupt or interfere with the business of the court or to impair its dignity or respect for its authority;
(6) Breach of the peace, boisterous conduct, or violent disturbance tending to interrupt or interfere with the business of the court or to impair its dignity or respect for its authority;
(7) Use of insulting, abusive, or discourteous language by an attorney or other person in open court, or in a motion, plea, brief, or other document, filed with the court, in irrelevant criticism of another attorney or of a judge or officer of the court....
Direct contempt is decided summarily without trial. State v. Watson, 465 So.2d 685, 687 (La.1985); La.C.Cr.P. art. 22. The summary procedure allows immediate vindication of the court's authority. State v. Watson, 465 So.2d at 687.
In the case of In re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948), the United States Supreme Court discussed the due process limitations on summary contempt procedures:
Except for a narrowly limited category of contempts, due process of law as explained in the Cooke [v. United States, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925)] case requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation. The narrow exception to these due process requirements includes only charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent "demoralization of the court's authority * * * before the public." If some essential elements of the offense are not personally observed by the judge, so that he must depend upon statements made by others for his knowledge about these essential elements, due process requires, according to the Cooke case, that the accused be accorded notice and a fair hearing as above set out.
In re Oliver, 333 U.S. at 275-276, 68 S.Ct. at 508-509, 92 L.Ed. at 695.
There is little doubt that the fair and efficient administration of justice requires that respect for the dignity of the courts be maintained and that willful disobedience or *1338 deliberate defiance of the court's authority be punished. State v. Bullock, 576 So.2d 453, 458 (La.1991). However, the power to jail for contempt is given to the judge on the assumption that it will be judiciously and sparingly employed. Id. at 458.
In the present case, we find that the trial court acted within its discretion in finding that defendant's outbursts in open court constituted three separate acts of direct contempt of court. Thus, we find no reversible error in this regard.
In defendant's final assignment of error, he requests a review of the record for patent error. For the purpose of an error patent review the "record" in a criminal case includes the caption, the time and place of holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the bill of particulars filed in connection with a short form indictment or information, the mentioning of the impaneling of the jury, the minute entry reflecting sequestration in a capital case, the verdict, and the judgment or sentence. State v. Oliveaux, 312 So.2d 337 (La. 1975); State v. Weiland, 556 So.2d 175 (La. App. 5th Cir.1990).
A review of the record reveals two errors. First, the minute entry and commitment reflect that the trial judge found defendant guilty of four counts of direct contempt of court, under the provisions of La.C.Cr.P. art. 21(4). The trial judge sentenced defendant to six months in parish prison on each of the four counts all to run consecutive with each other and consecutive with the ten year sentence. However, the transcript reveals that the trial court found defendant guilty of three counts of direct contempt and the trial court sentenced defendant to three consecutive six month sentences, to run consecutively with the ten year sentence.
It is well settled that the transcript prevails when there is a conflict between the commitment and the transcript. State v. Lynch, 441 So.2d 732 (La.1983). Thus, we amend the minute entry and commitment for contempt to reflect that the trial judge found defendant guilty of three counts of direct contempt of court and that the trial judge sentenced him to three consecutive six month sentences, to run consecutively with the 10 year sentence.
Second, the trial court failed to advise defendant whether his sentence is subject to diminution for good behavior and, if so, the prospective release date, as mandated by La.C.Cr.P. art. 894.1(D). However, La.C.Cr.P. art. 894.1(F) provides that no sentence shall be declared unlawful or inadequate for failure to comply with the provisions of Paragraph D. Therefore, the appropriate remedy is for this court to instruct the trial court to inform defendant of the provisions of C.Cr.P. 894.1(D), by sending written notice to defendant within ten days of the rendition of this opinion and to file written proof that defendant received the notice in the record of the proceedings. See: State v. Kershaw, 94-141 (La.App. 5th Cir. 9/14/94), 643 So.2d 1289. In Kershaw, we remanded with similar instructions relative to the failure of the trial judge to notify defendant of the prescriptive period for post-conviction relief.
Accordingly, defendant's conviction and sentence for violation of La.R.S. 14:95.1 and defendant's convictions and sentences for direct contempt of court are affirmed. The minute entry and commitment are amended to reflect that defendant was found guilty of three counts of direct contempt and that defendant was sentenced to six months imprisonment on each count to run consecutively with each other and with the ten year sentence. The trial judge is ordered to inform defendant of the provisions of C.Cr.P. 894.1(D), by sending appropriate written notice to defendant within ten days of the rendition of this opinion and to file written proof that defendant received the notice in the record of the proceedings. The case is remanded.
AFFIRMED AND REMANDED.
NOTES
[1] At the time of the offense, La.R.S. 14:95.1 provided for a penalty of imprisonment "for not less than three nor more than ten years." By Acts 1995, No. 987, § 1, the legislature amended 14:95.1 to provide for a penalty of "not less than ten nor more than fifteen years."
[2] Prior arrest and/or convictions may be considered in imposing sentence. State v. Wingerter, 498 So.2d 125 (La.App. 5th Cir.1986).