DANIEL L. DYSART, Judge.
11 Defendant-appellant, Willie George, appeals the trial court’s denial of his Motion for New Trial, in which he contends he was unaware of, and thus denied, his right to conflict free counsel. Finding no error in the trial court’s ruling and for the reasons that follow, we affirm.
PROCEDURAL BACKGROUND
Defendant was charged by a bill of information with one count of unlawful distribution of methylenedioxymethampheta-mine (“MDMA”) in violation of La. R.S. 40:966(A)(2) and one count of unlawful possession of a firearm while in possession of a controlled dangerous substance in viola *272 tion of La. R.S. 14:95(E). The same bill of information also charged Charlton Porter (“Porter”) with possession of MDMA with the intent to distribute in violation of La. R.S. 40:966(A)(2).
Defendant and Porter appeared before the trial court for arraignment and pled not guilty, with separate counsel; however, when they appeared for their January 15, 2009 motion hearing, they were represented by the same attorney, Hilliard C. Fa-zande II (“Fazande”). Fazande filed several pretrial motions, |2including a motion to suppress statement, motion to suppress identification, and a motion for preliminary hearing. After numerous continuances, these matters came were heard on November 12, 2009, and the trial court found probable cause to substantiate the charges and denied the motions to suppress as to both defendants, George and Porter.
On February 3, 2010, Fazande filed a motion for severance on behalf of defendant and motion to withdraw from representing Porter. The motion for severance alleged that defendant and Porter’s defenses were antagonistic to each other and that Porter had attempted to make defendant “perjure himself at trial.” The trial court granted both motions on February 5, 2010, and assigned new counsel, Jason Williams, to represent Porter.
Defendant’s case proceeded to trial. On April 21, 2010, the jury returned a verdict of guilty on both counts. Fazande filed motions for new trial and for pre-sentence investigation. After several continuances, Fazande filed a motion to withdraw as attorney of record based on defendant’s failure to communicate and cooperate with him. The trial court granted Fazande’s motion to withdraw and thereafter, Frank DeSalvo (“DeSalvo”) enrolled as counsel of record for defendant.
DeSalvo filed a motion for new trial, alleging that defendant was unaware of his right to conflict free counsel, that Fazande should have also withdrawn from representing defendant, or that the trial court “should have determined that each defendant had waived his right to conflict free counsel before allowing the defense to proceed.” The trial court denied the motion for new trial on September 29, |.<¡2010, holding that since Fazande had withdrawn from representing the codefendant Porter prior to trial, there was no conflict. The trial court further reasoned there was no allegation that an actual conflict of interest existed or was demonstrated at trial.
After denying the motion for new trial and prior to sentencing, DeSalvo took a note of evidence from Fazande to document the record for appeal as to the advice, if any, Fazande gave defendant regarding to his right to conflict free counsel.
FACTUAL BACKGROUND
Although the facts of the case are not in dispute or necessary for the determination of the issue presented, a brief factual background is provided in order to illustrate the conflict issue.
The charges against defendant arise out the events occurring on the night of June 22, 2008. Officer Tony Mitchell (“Officer Mitchell”) and Officer William Torres (“Officer Torres”) of the New Orleans Police Department, Special Operations Division, testified that they were patrolling in a marked police vehicle in the Sixth Police District when they responded to a call involving gunshots fired in the 8200 block of Thalia street. The officers testified that, as they approached the area where the gunshots had been fired, they observed a Nissan Armada parked on Thalia Street with the engine running. Both officers testified that they observed Porter come out of a Thalia Street residence, walk toward the passenger side of the Nissan and *273 receive a plastic bag containing brightly colored pills through the ^passenger side window from the defendant. The officers exited the police car and approached the defendant’s vehicle. Officer Mitchell observed a clear plastic bag containing brightly colored objects which defendant was attempting to put into the center console of defendant’s vehicle, where he also observed a .40 caliber Glock handgun. After their arrest, Officer Torres searched Porter and obtained another smaller plastic bag of brightly colored objects in his front right pocket.
At trial, the State and the defendant stipulated that lab results of the brightly colored pills recovered on June 22, 2008, from the Nissan and Porter tested positive for MDMA, commonly known as Ecstasy.
DISCUSSION
Defendant’s sole assignment of error is that the trial court erred in denying his motion for new trial on grounds that he was deprived of his constitutional right to conflict free counsel. In its Ruling which denied defendant’s motion, the trial court reasoned, in part:
Defendant has filed a motion for new trial claiming he did not know he was entitled to conflict free counsel. While Mr. Fazande represented both clients initially, on February 5, 2010, this court granted Mr. Fazande’s motion to withdraw from representing the co-defendant, Mr. Porter. At the time that this defendant went to trial, there was no conflict, nor has the defendant alleged any actual conflict of interest existing or demonstrated at trial.
In State v. Salinas, 97-716, [pp.] 8-9 (La.App. 3 Cir. 10/29/97)[,] 703 So.2d 671, 676,[1] the Third Circuit summarized the law on representing multiple clients as follows:
Is-.. “multiple representation is not per se illegal and does not violate the Sixth Amendment to the United States Constitution or Article I, [§ 13], of the Louisiana Constitution unless it gives rise to a conflict of interest.” State v. Kahey, 436 So.2d 475, 484 (La.1983). Where there has been no objection to the multiple representation prior to or during trial, the defendant must “establish that an actual conflict of interest adversely affected his counsel’s performance” in order to establish a claim of ineffective assistance of counsel in violation of the Sixth Amendment. State v. Lobato, 621 So.2d 103 (La.App. 2 Cir.1993). The mere “possibility” of conflict is insufficient to impugn a criminal conviction; the defendant must show that his counsel actively represented conflicting interests. Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).
It is well settled that the right of a criminal defendant to the assistance of counsel during the proceedings against him is a cornerstone of our legal system. State v. Franklin, 400 So.2d 616, 620 (La.1981). To be more than just a hollow right, our law requires that assistance of counsel be effective. Id. As the trial court recognized, our jurisprudence is equally well settled that the mere possibility of a conflict is insufficient to establish that an attorney’s performance was adversely affected. See: State v. Holmes, 99-0898 (La.App. 4 Cir. 11/8/00), 791 So.2d 669, writ denied, 01-2205 (La.6/7/02), 817 So.2d 1143; State v. Serpas, 485 So.2d 999 (La.App. 4 Cir.1986); State v. Ross, 410 So.2d 1388 (La.1982).
This Court noted in Holmes that a defendant must prove both an actual *274 conflict of interest and prejudice in order to establish a claim of ineffective assistance of counsel. Id., p. 10, 791 So.2d at 682. An actual conflict exists if the | (¡defense attorney owes duties to a party whose interests are adverse to those of the defendant. Id. Actual conflicts of interest that affected counsel’s performance must be established by specific instances in the record, and the mere possibility of divided loyalties is insufficient proof of actual conflict. Id., p. 26, 791 So.2d at 691-692, citing, State v. Lobato, 621 So.2d 103 (La.App. 2 Cir.1993). The burden of proving an “actual conflict of interest,” rather than a “mere possibility of conflict,” rests upon the defendant. State v. Carter, 10-0614, p. 7 (La.1/24/12), 84 So.3d 499, 509-510, reh’g denied (3/9/12), cert. denied, — U.S. —, 133 S.Ct. 209, 184 L.Ed.2d 40 (2012)
In a pre-trial context, regardless of how the conflict of interest issue arises, the trial court has two options to avoid a conflict of interest: appoint separate counsel or take adequate steps to ascertain whether the risk of a conflict of interest is too remote to warrant separate counsel. State v. Cisco, 01-2732, p. 17 (La.12/3/03), 861 So.2d 118, 130 (Citations omitted). Failure to do one or the other in a case in which an actual conflict exists requires reversal. Id.
The Cisco court defined an “actual conflict” as follows:
If a defense attorney owes duties to a party whose interests are adverse to those of the defendant, then an actual conflict exists. The interest of the other client and the defendant are sufficiently adverse if it is shown that the attorney owes a duty to the defendant to take some action that could be detrimental to the other client.
Id., p. 18, 861 So.2d at 130 (Citations omitted).
Notably, as in the instant case, “if the objection is made to the claimed conflict after trial, the defendant must also show he was actually prejudiced.” Id., 01-2732 p. 17, 861 So.2d at 130, fn. 18, (Citations omitted, emphasis supplied); State v. Montegut, 618 So.2d 883, 888 (La.App. 4 Cir.1993) (if the defendant fails to raise the issue until after trial, he must prove prejudice in addition to actual conflict of interest). Thus, if the issue of counsel’s alleged conflict of interest is not raised until after trial, “the defendant must prove that an actual conflict of interest adversely affected his lawyer’s performance.” State v. Reeves, 06-2419, p. 179 (La.5/5/09), 11 So.3d 1031, 1082 (Citations omitted); Carter, supra, p. 41, 84 So.3d at 509, fn. 3 (Citations omitted).
In this matter, the record does not reveal any instance where defendant’s counsel was burdened with a conflict of interest, or where his counsel’s performance adversely affected his representation. Rather, the record indicates that, once defense counsel informed the court as to the possibility of a conflict, the matter was resolved when defendant’s counsel withdrew from representing codefendant Porter and the cases were severed. The joint representation ended when Fazande withdrew from representing Porter and there is no evidence reflecting a continuing conflict of interest thereafter.
Defendant claims that he need not show that he was actually prejudiced by Fazande’s performance because a conflict of interest of joint representation was raised prior to trial by Fazande’s motion to withdraw and motion for severance. Defendant further argues that trial court failed to inform defendant of his right to conflict free counsel and investigate whether the risk of conflict of interest warranted separate counsel. Even assuming that Fa-zande’s pre-trial motions are | (¡sufficient to *275 raise a conflict of interest on defendant’s behalf, based upon review of the record it appears that the trial court took the appropriate steps to ascertain if a conflict of interest existed.
Prior to defendant’s sentencing, a note of evidence was taken from Fazande by defendant’s new counsel, DeSalvo, and the following colloquy took place between Fa-zande and the trial court:
The Court: Just a couple things. Mr. Fazande, do you remember on the day of the arraignment that I called to your attention that there may have been a conflict in this case right?
A. That is correct, your Honor.
The Court: Do you also remember that I asked you just to consult with both of the gentlemen and make them aware of what your position was and what you legal opinion was regarding the possibility of representing them both?
A. I remember that very clearly.
The Court: At arraignment my remembrance of it and I think it can be confirmed by the record is that you said that you had spoken with them and you felt that there was no conflict.
A. That is absolutely correct, your Honor.
The Court: Subsequent to that as we proceeded through motions you filed a Motion to Sever saying that during your course of investigation it came to your attention that they may have defenses antagonistic towards each other; right? A. That is correct, your Honor.
The Court: ... [I]n light of that I granted a motion to sever and you elected to represent one of the defendants, Mr. Willie George; is that correct?
A. That is correct, your Honor.
The Court: But you are acknowledging at this time that this Court lived up to its duty of initially making you aware of the possibility of a conflict, asking you to investigate it and following that you responded to the Court that you did such an investigation.
|9B. Your Honor, that is a true and accurate representation of what occurred in this case.
The record in this matter reflects that, at the time of their arraignment, Porter was represented by Edward Rantz solely for purposes of the arraignment. It is unclear whether defendant was represented during the arraignment as no counsel is identified for him, although the minute entry for that date reflects that notice was sent to “defense counsel.” When Porter and defendant next appeared in court for hearings on motions, both were represented by Fazande. While the trial court appears to have mistaken as to when the trial court discussed the potential conflict of interest in the joint representation, Fa-zande clearly testified in the note of evidence that the court did “[call] to his attention that there may have been a conflict in this case.”
The record further reflects that Fazande subsequently consulted with defendant and Porter and found there was no conflict of interest in jointly representing them at that time. Thereafter, during the course of investigating and preparing for trial, Fazande became aware that defendant and Porter’s defenses were antagonistic to each other and moved to sever the trial and withdraw from representing Porter. The trial court granted Fazande’s motions and thus, it appears that the trial court took adequate measures to insure that any conflict was resolved by appointing separate counsel for Porter and severing the trial.
We likewise note that the failure of the trial court to inquire into the *276 joint representation on the record does not rise to the level of a denial of a constitutional right and is subject to a harmless error review. State v. Miller, 00-0218, p. 14 (La.App. 4 Cir. 7/25/01), 792 So.2d 104, 115, fn. 4; Holmes, supra, at p. 694. Therefore, the failure of the trial court to observe the technical requirements of La. C.Cr.P.10 art. 517[2] does not mandate an automatic reversal. Defendant still must prove that an actual conflict of interest existed and that prejudice resulted.
Defendant claims that Fazande had an actual conflict in representing him after he withdrew from representing Porter because he did not advise defendant of his right to conflict free counsel. To support this claim, defendant relies on Fa-zande’s testimony from the September 26, 2011, note of evidence that he did not understand what the right to conflict free counsel meant. Upon a reading of the entire transcript, however, it appears that Fazande, at the trial court’s instruction, did speak with defendant and Porter about possible legal issues presented by his jointly representing them both. Fazande also testified that while initially he felt there was no conflict of interest, over the course of his joint representation he became aware that defendant and Porter’s defenses were antagonistic and thus created a conflict. After becoming aware of the potential issues, Fazande stated that he advised defendant of this and filed a motion for severance. The motion specifically alleged that severance was required because each defendant intended to testify at trial, and a joint trial would require each to defend against the state and each other. Such a situation would constitute a conflict of interest because it would have required Fazande to cross-examine his current client. See, e.g. State v. Tart, 93-0772, p. 19 (La.2/9/96), 672 So.2d 116, 125 (a conflict of interest can arise when an attorney is required to cross-examine a witness who is testifying against the defendant and who was or is a client of the attorney). Thus, although Fazande ludid express some confusion over the phrase “conflict-free counsel,” a review of the transcript and the motion for severance indicates that Fa-zande did advise them of the potential conflict of interest arising out his joint representation and filed the motion to withdraw and sever to avoid such a conflict.
Defendant further argues that Fa-zande’s failure to elicit testimony as to Porter’s culpability demonstrates that his loyalties were divided between Porter and defendant and thus establishes an actual conflict. Louisiana courts have consistently held that a defense attorney required to cross-examine a current or former client on behalf of a current defendant suffers from an actual conflict. Cisco, supra, p. 17, at 861 So.2d at 129. Here, however, Fazande was not called upon to cross-examine Porter or any other his former clients in the State’s prosecution. Thus, because Porter was not called to testify at defendant’s trial, Fazande was not in situa *277 tion in which he owed a duty to a party that was adverse to defendant’s interests. Accordingly, we find that defendant has not shown an actual conflict of interest on the part of his attorney, or that he was actually prejudiced, and therefore, his conviction and sentence are affirmed.
AFFIRMED

. [Rev’d on other grounds, State v. Salinas, 97-2930 (La.9/25/98), 719 So.2d 1035]

. La.C.Cr.P. art. 517 provides:
A. Whenever two or more defendants have been jointly charged in a single indictment or have moved to consolidate their indictments for a joint trial, and are represented by the same retained or appointed counsel or by retained or appointed counsel who are associated in the practice of law, the court shall inquire with respect to such joint representation and shall advise each defendant on the record of his right to separate representation.
B. Unless it appears that there is good cause to believe that no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant’s right to counsel.